Allen, J.
This is an appeal from a judgment of the Circuit court of King & Queen county, affirming an order and judgment of the County court establishing a public landing on the lands of the appellant, and of A. S. Sale.
The two first errors assigned in the petition are for alleged imperfections in the report of the viewers. No *14 motion to set aside the report for this cause seems to bave been made in the County court. At the final of the cause in the County court, the appelian£ move¿ to quash the petition, for errors on its face, and also moved to quash the inquisition; but does not appear to have objected to the report of the viewers. Such objection, according to the case of Lewis v. Washington, 5 Gratt. 265, should have been made in the County court, by a motion to set aside the report.
But the objections, if taken in time, should have been overruled. In their report, the viewers state that a public landing at Walkerton would be a very great convenience to the public, as a list of persons, all heads of families, to the number of one hundred and twenty, had been shown to them, all of whom, as well as. many others, would be benefited by the proposed landing. The report is objected to, first, in not returning the list of one hundred and twenty names shown to them, to enable the appellant to object to any of them being witnesses, judges or jurors; and in the second place, because the report professes to be made, not upon their own judgment and upon a view of the land, but upon the list of names so exhibited to them.
As was said in the case of Lewis v. Washington, ubi supra, the authority of the County courts to establish public roads and landings, is a branch of their police jurisdiction, conferred for the benefit, and to be exercised at the common expense of all the citizens of the county. It is therefore necessary and proper that the court should look to the necessities of those applying for the landing, how far it may be productive of convenience or inconvenience to the public or individuals, and whether, in view of all the circumstances, a proper case is made for the application of the county resources to the object. To aid in arriving at a proper conclusion, the viewers are required to report truly and *15 impartially the conveniences and inconveniences which will result, as well to individuals as the public, if such landing be established. It was proper that the viewers should enquire whether the public convenience would be promoted by the establishment of the landing; and this could be best done, by ascertaining what number of individuals would be accommodated by it, rather than by relying on vague generalities as to its being a public benefit. But the law does not require a return of the names of those benefited or accommodated, either where a list is made out by the viewers themselves, or where it is shown to them by others; and it was not necessary to allude to it in their report. Nor is there any foundation for the objection that the report is not based on their own judgment and view. They report expressly, as their own judgment upon the view, that a public landing at Walkerton would be a very great convenience to the public, and they refer to this list of one hundred and twenty names, as well as many others not on the list, and to other facts adverted to in their report, as the circumstances which had conducted them to that conclusion.
The third error assigned is, that the appellant was not duly summoned to show cause, at August court 1848, against the establishment of the landing. The appellant, as early as June 1847, was, on his own motion, admitted a party to the controversy, appealed from the order made at that term to establish the landing, and reversed the order in the Circuit court. That court quashed all the proceedings subsequent to the return of the report of the viewers, and remanded the cause. When returned to the County court, a new summons issued, which was returned “ Copy handed to Muiré and Sale.” The return is without date, and it is objected that it is insufficient, because it does not appear the notice was reasonable. It is conceded that the act, under which this proceeding was had, prescribes *16 no particular time for the service of process. The act regulating proceedings in civil suits, 1 Rev. Code 506, 70, permits process to be executed at any time before the return day shall have passed. And the act 1 Rev. Code 260, § 76, directs the proceedings in the County courts to conform, as nearly as may be, to the proceedings in the Circuit courts. The service here was intended to give notice to the party; and as it would be sufficient, if executed at any time before the return day had passed, the service must be deemed reasonable, unless the contraiy appears. Here the appellant appeared and contested the application on its merits, without objecting to the return on the summons. In the case of Bernard v. Brewer, 2 Wash. 76, the act required ten days’ notice of the motion for the writ of ad quod damnum; and all the judges were of opinion that a defence, made upon the merits, would have been a waiver of the objection of want of notice. So that even if the act had required the summons to be executed a certain number of days before the return, yet, according to this authority, as he did appear, which was the object of the summons, and being the only person interested in the fact of notice, and as he did not object to the want of notice, he must be considered as waiving it. Here the service was good according to law, and the burden was on him to show the notice was insufficient or not reasonable.
I think there is nothing in this objection. The service is legal, and for aught the record shows, the notice was sufficient. . It, therefore, is unnecessary to consider the objection taken in the eighth assignment of errors, which was to the hearing the evidence of the officer to prove due service of the summons. The appellant was not injured by it.
There is nothing in the fourth error assigned. The road law does not require the writ of ad quod damnum and inquest to be returned to the next court. The *17 provision of the act, 2 Rev. Code, 234, $ 2, is, that the inquest, with the writ, shall be returned to the court. The writ in this case did require a return to the next court; but that is merely directory to the officer, and his failure to make the return within the time prescribed would not affect the validity of an inquest properly taken.
It is further objected, that the inquest was not properly charged. The 15th section of the act concerning public roads, &c., 2 Rev. Code, 238, provides, that the same proceedings shall be had upon an application for the establishment of a landing .as in applications for the opening or alteration of roads. The writ was sued out and the sheriff required to charge the jury according to the directions of this law. By the act of January 30th, 1834, Sess. Acts, 97, it is provided, that whenever a jury of inquest is impanneled according to the directions of the 2d section of the act of 1819, concerning public roads, and for the establishing of public landings, the sheriff shall, in addition to the charge prescribed by the said section, charge the jury to combine, with the estimate of the damages to be occasioned by the opening of the road, a just regard to the advantages which the proprietors or tenants will derive from the passing of the same through their lands. Though the first clause directs that whenever a jury is impanneled, under the 2d .section of the act of 1819, the additional charge therein prescribed shall be given, the subsequent provision, prescribing the charge, shows that the charge was confined to road cases. The jury is to combine, with the estimate of the damages occasioned by the opening of the road, a just regard to the advantages resulting from the passing of the road through the land; a charge totally inapplicable to the case of a landing, according to the letter of the law. Nor does it come within the spirit of the act. It was held in *18 the case of the Jas. River and Ka. Co. v. Turner, 9 Leigh 313, under a similar provision in respect to lands condemned for the use of the canal, that the advantages thereby contemplated are such as particularly and Peculiarly affect the particular tract of land a portion whereof is condemned, and not advantages of a general nature, which may be derived to the owner in common with the county at large.
A landing merely lays open to the public use a portion of the property of an individual. Nothing is done thereby to improve the residue of the particular tract, or to give to it advantages which it did not possess before. Its relative position, with regard to the navigable stream, is not thereby altered, and the public is merely let in to participate in the advantages theretofore enjoyed by the owner. There would seem, therefore, to be no good reason for embracing the case of a landing in the charge required by the act of January 30, 1834. So that this additional charge to the jury is neither required by the words or the spirit of the act, upon an application to establish a landing.
The sixth error assigned is, that the jury have undertaken to run a dividing line between the appellant and Sale, and to decide which was Sale’s and which the appellant’s land, when the same, as appears by the record, was in dispute between them.
It appears from the order of the court establishing the landing, that the appellant claimed title to the land for which damages were assessed to A. Gf. Sale, and by the consent of Sale, it was ordered, that the damages so assessed to Sale should be withheld from him until it should be determined, in any manner between Sale and the appellant, to whom the land in dispute really belonged; and then that the damages assessed should be paid to the party entitled to the land.
From some exhibits filed in the papers, it seems that *19 there was a- dispute between the appellant and Baylor Temple, under whom Sale claimed, as to the true position of the line between them. In 1840, the sioners reported the fact of the dispute and the con-dieting pretensions of the parties, and the surveyor, with a jury, was ordered to lay out the bounds in dispute. The jury so impanneled decided the controversy against the appellant. What shape the controversy thereafter assumed, does not appear by the record. The viewers reported that the land lies between the main road and the river Mattaponi, open and unenclosed; and the plat returned with the inquest shows it to be a small triangle between the river and two roads branching from a common stem, and running, one to Sale’s wharf, the other to a store-house of the appellant. There being no actual occupancy of the land, and each party claiming to be the proprietor, the viewers and the jury could only treat each as the proprietor up to the line so established by the jury, under the previous order of the court. The effect of the survey returned with the inquest in this case, was not to determine the right, but to ascertain the quantity of land on each side of the disputed line, so as to assess the damages properly. They could not have pursued any other course. The controversy between the coterminous landholders could not deprive the community of the right to condemn the land for a publie landing. The land lying open or unenclosed, the jury and the viewers treated each as in possession up to the line as surveyed on the former occasion; and the law, in the absence of any actual possession, would consider him in possession who had the right.
In running the line to ascertain the quantity, it passed through the edge of a small pen enclosed by one of the servants of the appellant. An inspection of the plat shows it to have been so near the line as not to affect the question of possession. The inference would *20 rather be, that the line was recognized, and the enclosure made with reference to it, but accidentally crossed it a few feet. I think the jury, under the circuinstances, did right in assessing the damages to each ^le apparent owners up to the disputed line, leaving the subject of boundary and claim to the damages to be litigated between the parties themselves.
Nor is there anything in the seventh assignment of errors, objecting to so much of the order as withheld payment of the damages assessed to Sale until the dispute about the boundary should be determined, and directing that the damages should be paid to the party to whom it appeared the land belonged. Being made with the consent of Sale, he cannot and. does not object; and the reservation was made for the benefit of the appellant, upon his claim of title. The law, directing the levy for such damages to be made at the next court, is directory; and the omission to do so would not deprive the party of his right to them. In this case, there can be no doubt the court would be bound to levy for the damages whenever the appellant shows that he is entitled to them.
The last error assigned is that the damages are too small. The land condemned, and for which damages were assessed to the appellant, contains two roods and thirty-one poles, a portion of it covered by water at every rise of the tide, and the residue for the most part a barren sand bank, and worthless for purposes of cultivation, detached from the main body of the appellant’s land by a public road, but not separated from his wharf and granary. It is manifest, therefore, the land is intrinsically of little value, and that the jury, in assessing the damages, have had regard to considerations connected with its position on a navigable stream, where there was a public road leading to a ferry. The appellant has examined witnesses to prove, that if the public had no means of access to the river except *21 through his wharf and granary, and should pay him a fair and reasonable compensation for the privilege, it would be a source of profit; but the evidence shows that the farmers had not been in the habit, for some years past, of storing their grain with the appellant, but have been in the habit, latterly, of delivering their grain at the wharf and granary of Sale, not far from the wharf and granary of the appellant. Another witness supposes the landing would diminish the value of the appellant’s property one-third. This testimony is too vague and indefinite to enable an appellate tribunal to say that the estimate of the inquest was too low. The public had access to the river at the wharf and granary of Sale; so that the opinion that the wharf and granary of the appellant might be a source of profit, if the public could be accommodated at no other place, is entitled to but little weight; and it does not appear to what other property of the appellant the witness alluded, who supposed that it would be diminished one-third in value by the proposed landing; nor does he say what is the value of the property which would be so diminished in value. The evidence in the record does not show that the damages assessed were insufficient; and in the absence of such proof, the inquest taken upon the ground must be deemed conclusive.
After the order and judgment of the County court establishing the landing, the appellant appealed to the Circuit court; and the appeal being on the facts as well as the law, new testimony, not in the record, was offered at the trial in the Circuit court. Amongst other things, the appellant proved that the names of Fleet and Ryland were on the list of persons shown to the viewers, and who the viewers supposed would be benefited by the proposed landing. That Fleet and Ryland were justices of the peace, and both were on the bench, and members of the court at the August term 1848, when the order to award the writ of ad *22 quod damnum, was entered; and that Ryland was a member of the County court at the October term, when the landing was established.
Without stopping to enquire whether it would be regular to object in this mode to the competency of the justices who composed the court, it is sufficient to say that the evidence shows no legal disqualification. The fact that the viewers supposed that they, with other members of the community, would be benefited by the landing, does not show any direct interest in the controversy. Every individual who uses a public road, landing or other improvement, may, in some sense, be said to be benefited by it; but such conjectural benefit does not constitute an interest in the controversy which would disqualify a juror, and much less the court. In regard to the latter, it is in the power of the party to preserve on the record every decision made against him; and if erroneous in law or fact, the error can be corrected in an appellate tribunal. In the present case, no suggestion seems to have been made in the County court, that any member of the court had an interest in the controversy. The appellant excepted to the decision of the County court, and spread the facts on the. record; and in the Circuit court the case was heard upon the record and proceedings of the County court, together with the viva voce testimony then offered. If upon such hearing it appeared that the proceedings were regular, and that the facts entitled the petitioners to an order establishing th§ landing, the judgment of the County court in their favor was properly affirmed. I think the judgment of the Circuit court was right, and should be affirmed with costs.
The other judges concurred in the opinion of Allen, J.
Judgment affirmed.